## William Bell *versus* The Ohio and Pennsylvania Railroad Company.

Where the state surveyed and laid out a town into in-lots and out-lots, reserving 100 acres of land without the town for a common pasture, and afterwards sold the lots; *Held*, that the right of common so annexed to the town lots, was a common *appurtenant* as distinguished from a common *appendant*.

If one who has a right to common appurtenant, purchase part of the land subject to the easement, all his right of common is extinguished.

So if he be a disseisor of part of the land subject to the easement.

And the incidents of light, air, prospect, &c., fall with the principal.

The right to take the herbage by the mouths of his cattle gives the commoner no incidental right to keep the common open as an ornament to his dwelling, or as contributing to his own personal pleasure or convenience.

Where a commoner's right has been extinguished, he has no interest in the common, to entitle him to ask for an injunction to restrain a trespasser on the common rights of others.

The annoyances arising from the necessary use of a railroad, is not a nuisance *per se*. The fact of nuisance in such case must be determined by a jury.

ERROR to the District Court of *Allegheny county*.

This was an application to the District Court of Allegheny county for an injunction to restrain the defendants from the use of certain works, and from prosecuting certain improvements specified in the bill, over and through a portion of the South Common of Allegheny City. On the hearing of the case in this Court, one of the judges was absent, and the four judges who heard it, were equally divided—the *decree* of the District Court was therefore affirmed.

The point decided in the opinion of the chief justice was not made below, nor argued in this Court. The report of the case is therefore confined to the opinion of the District Judge, which contains an abstract of the bill and answer, and a clear view of all the facts necessary to the understanding of the grounds upon which the decree was founded.

In the opinion of the District Court the following principles were held:—

That at the time this company (the defendants) was chartered, the right of a commoner in the premises in dispute, was vested in the complainant, the right of sale or title to the commons was vested in the city of Allegheny, and the right of eminent domain in the state.

When the legislature has granted common ground to a city for public purposes, the right of eminent domain, existing in the state, is not thereby exhausted, but may be abridged and devoted to other purposes.

The right of eminent domain is inalienable and inexhaustible, and may be exercised as often as the sovereign power may choose, within the provisions of the constitution as to compensation.

VOL. I.—21

[Bell *v.* Ohio and Pennsylvania Railroad Company.]

Of the occasions proper for the exercise of this power, the legislature is to judge, limited only by the public utility of the object.

If the principle applies to a grant of land, *a fortiori* it will apply to a mere easement issuing out of land.

Where there has been no exercise of the right of common for more than twenty years, *quære* if the doctrine of *nonuser* does not apply.

When a party who sets up a right looks on in silence while another is spending large sums of money in making improvements under his own eye, and has made no claim for a period of two or more years, he will be estopped in equity when he asserts it.

And if such right be of little importance, Chancery will never interfere.

Where the right of way over a common was granted to a railroad company by the authorities of a city, in whom the title vested, the city alone has the right to complain, if the company has exceeded or is about to exceed the powers conferred by the grant.

The Court will interpose to restrain a nuisance *per se*, but if not in itself noxious, the matter complained of must first be tried at law

Opinion of the District Court (HAMPTON, J.):—

"The complainant, Bell, sets forth the laying out of the town of Allegheny, and reservation of one hundred acres as a common of pasture, by authority of an Act of Assembly of 1787; the sale of the lots of said town; that the purchasers thereof became entitled to the right of common upon the land reserved; that by an Act of Assembly of the 13th April, 1840, the right of the Commonwealth to all the lands within the limits of the city of Allegheny, excepting such parts as had theretofore been appropriated by grant and authority of law, was granted and vested in the city of Allegheny, for such public uses as were vested in the Act of 1787, and such *public uses as the Select and Common Councils might from time to time direct and ordain*, provided releases were obtained from the commoners; that, relying upon the right to the undisturbed use and enjoyment of the common, the owners of lots in the town so laid out and sold, have erected dwellings, and made valuable improvements for private residences thereon, and for over twenty-one years have continued in the peaceable, quiet, and undisturbed enjoyment thereof, and of the said common; that complainant owned one of said lots, and as such, was entitled to the right of common; that he resides with his family on said lot, and is entitled to the quiet, peaceable, and undisturbed use and enjoyment of said lot and habitation, and the common aforesaid.

"The bill then sets forth that the defendants, being a corporation, created by authority of an Act of the General Assembly of the State of Ohio, passed the 24th of February, 1848, and by an Act of Assembly of the Commonwealth of Pennsylvania approved the 11th April, 1848, wrongfully and unjustly contriving and intending to appropriate the said common to their own use, located their railroad over, through, and upon the said common, passing long the south side of the South Common to Federal street, by

authority of an alleged resolution of Councils, but denying that any such resolution was ever passed; that under colour of said resolution, defendants entered upon said common, laid down their track, appropriating fifty feet through along the south side of said common to Federal street to their own use, and have since that time wrongfully and unjustly continued to disturb and destroy the quiet and peaceable use of said common by the owners of lots in said town, and have used the same for their railroad, and for cars, engines, locomotives, horses, carriages, and wagons, and for carrying on the traffic and business of said corporation, to the great nuisance of said complainant; that defendants threaten to erect upon the south side of said common, certain buildings for car-houses, depot, and other structures, for the use of said company.

"That defendants are erecting a platform for the receipt and discharge of freight and passengers on a portion of said common, and building a certain wall thereon; that said platform injures and destroys the common, and deprives the owners of lots of the use of said common, and obstructs and annoys them in the quiet and peaceable enjoyment of their lots and habitations aforesaid; that as soon as complainant knew defendants intended to erect said buildings and superstructures, he remonstrated with the President of said company against the use and appropriation of said common, and served a written notice upon him to that effect; that the construction and use of said platform will injure and destroy the use of the whole or a greater part of the South Common by the commoners, and greatly diminish the value of the lots in said common fronting on the South Common, and cause a great and irremediable damage and nuisance to the complainant; that defendants keep their cars and locomotives standing on the track on said common, and receive and discharge freight and passengers thereon, to the nuisance of complainant and others; that the appropriation of the common as aforesaid, was wrongful and without any lawful authority; that defendants have wrongfully and fraudulently exceeded the powers vested in them by law. These are the principal matters contained in the bill. Complainant prays for a special injunction against the defendants, enjoining them from using or occupying the said common, or any part thereof, with their track, cars, trains, and locomotives, or for the receipt or delivery of freight or passengers, or in any manner, for the business of said corporation, and from digging in and upon said common, and from erecting any wall, platform, buildings, or other structures in and upon said South Common, or placing thereon any stones, gravel, earth, timber, plank, or other materials, and from keeping their engines, cars, trains, or locomotives standing or remaining still upon the track of said company along the said South Common, and that they be enjoined from keeping, and be required to remove all platforms, walls, structures, stones, and other mate-

rials that may have been deposited on said common by said company:

"And that on a final hearing, said injunction may be made perpetual; that the uses of said common by complainant, and other lot-owners, may be declared and enforced, and that the rights of complainant in said common may be quieted, or that he may have such other and further relief as equity and good conscience may require.

"A special injunction was awarded, enjoining the defendants from erecting any more buildings on that portion of the common occupied by them, but allowing them to use the road as they had done before the filing of the bill. Subsequently the defendants put in their answer, of which the following is a summary:

"The answer admits the laying out of the town of Allegheny, by authority of the Act of 1787, in the manner and for the purposes alleged in the bill; also the reservation of one hundred acres for a common of pasture, for the owners of town lots; also that by an Act of Assembly of 13th of April, 1840, erecting said borough or town into a city, the right of the Commonwealth, which was the right of soil of all lands within the limits of said city, with certain exceptions, was vested in the city of Allegheny, for such public uses as were vested in the said Act of 1787, and such other public uses as the Select and Common Councils of said city might from time to time direct and ordain—with the proviso that no part of the land allotted by the said Act for a common should be applied to any other purpose, without releases being obtained from the commoners; also that the plaintiff is the owner of one of the town lots, on which he resides and has made valuable improvements, and has lived on the same for many years. But it is emphatically denied that he and other lot-holders have, for and during the period of twenty-one years and upwards, continued in the quiet and undisturbed enjoyment of the said common ground for the purposes to which the same was appropriated, viz.: as a common of pasture; because, as they allege, a portion of the same has been enclosed, and the residue thereof, and particularly that part which is especially referred to in the bill, has been open to, and used by, the public as a common and public highway during all that time. The respondents also admit their existence as a corporation by authority of an Act of the 11th of April, 1848, and allege that under that Act they are authorized to construct a railroad from the city of Pittsburgh westward, in the direction of the state of Ohio, and that they located the said road, as charged in the bill, over, through, and upon the said common ground, at the south side of the South Common, west of Federal street; and that they procured for that purpose a resolution to be passed by the Select and Common Councils of the said city of Allegheny, of the tenor stated in complainant's bill, with

[Bell *v.* Ohio and Pennsylvania Railroad Company.]

the exception of restraining them to the south side of the South Common, as the same had been located—and that said grant and privilege was afterwards ratified and confirmed by a subsequent resolution of said Councils.

" The answer further admits, that under said authority and privilege the defendants entered upon said common, and laid down and constructed their railroad tracks over and upon the same, and did appropriate to their own use a part thereof, of the width of fifty feet, and have since occupied the same for the purposes of said road, as they claimed they had a right to do by virtue of the said resolution of Councils, and under the authority of the ninth and eleventh sections of an Act regulating railroad companies, passed by the legislature of Ohio, on the 11th day of February, A. D. 1848, and adopted and re-enacted by the General Assembly of this Commonwealth in the Act to incorporate the respondents, passed the 11th day of April, 1848; that it was necessary for the respondents to occupy the said common, and the said Select and Common Councils owned and had charge thereof, as claimed in complainant's bill, and were therefore competent to agree upon the manner, terms, and conditions upon which the same might be used or occupied by the respondents.

" The answer further admits, that having entered upon the said common ground, by virtue of the authority and privilege so granted to them, they did, on or about the — day of ——, A. D. 1850, proceed to locate their said road, and construct the same, and to purchase ground and erect buildings, with an express view to the said location, and the termination of said road at Federal street; and in so doing, expended a very large sum of money, and that said work was done, and said expenditures made, under the immediate observation, and with the knowledge of the complainant, and without any objection or remonstrance from him; but that, on the contrary, the said complainant, well knowing that the said right of common was of no practical or appreciable value, and believing that the said road would be advantageous to the lot-holders generally, and himself in particular, was content with the said entry and location, and, on more than one occasion, expressed his entire satisfaction therewith.

" The respondents further admit, that it was their intention to erect over and upon their roadway, at the terminus thereof, at and adjoining to Federal street, a passenger station, or building for the protection, convenience, and comfort of travellers in their cars, at their arrival and departure from that point; but deny any intention of erecting the same upon any other portion of the common, than that held and appropriated by them as a roadway, or of erecting any other building or buildings upon any other part of the common ground, or for any other or different use; but say that *the execution of said design has been suspended, and they*

[Bell *v.* Ohio and Pennsylvania Railroad Company.]

*cannot answer whether or not the same will be resumed.* They, however, claim the right to cover and protect their roadway, as an incident to the use, and as essential to the proper enjoyment thereof. .

" They further admit the digging upon the line of their road, the erection of a stone wall and platform at the termination of the road, for the reception and delivery of freight and passengers, and have used the same for such purposes; but they deny that the said platform interfered in any way with the said common of pasture, or has injured or destroyed the same; or that the complainant is in any way disturbed in the use or enjoyment of his lot thereby, or has been deprived of the enjoyment of his right of common thereby.

" The respondents further' admit the application for information and notice, as charged in the bill, but do not admit that the president, at any time, declared that it was their intention to use the whole common ground for their business and purposes, or that they, at any time, entertained any such purpose; which, on the contrary, they now expressly and distinctly disclaim and disavow.

" And the respondents, in answer to the allegations, that the construction and use of the platform erected by them will destroy the use of the whole or greater part of the South Common by the commoners, and will greatly diminish the use, improvement, and value of the lot and habitation of the complainant, by creating a great and irremediable nuisance to his said property, say, that the said South Common ground, as it is denominated, has not, at any time for the last twenty years and upwards, been used and occupied as a common of pasture; nor is of any value whatever for such purpose, a portion thereof having been before that time appropriated and enclosed by the complainant and other lot-holders within their own lots, and the residue having been, for all that time, without herbage for the sustenance of any beast whatever, and used by the public at large as a common highway.

" They deny that the construction or use of the platform has created any nuisance, or inflicted any damage whatever, or any which is remediable either at law or in equity; or any other or greater inconvenience than is suffered by every proprietor whose residence is within the like distance of a railway terminus, or mart of trade.

" They admit that they have permitted their cars, locomotives, and trains to stand upon the track, at its terminus, at all hours when the state of their business required it, for the purpose of running and discharging freight and passengers, and claim the right to do so, but deny that they have other sufficient room and convenience for that purpose, or that they have used the common ground outside of their railroad as a depository for freight, &c.,

[Bell *v*. Ohio and Pennsylvania Railroad Company.]

or that they are responsible for the use that may be made of it by others who do business with said road.

" They further allege that the necessity of obtaining releases from the commoners was entirely done away with, and superseded by the Act of Assembly incorporating the said company, and authorizing them to enter upon all lands which might be required for the purpose of the road, and upon all such as were in charge of municipal corporations, or other public bodies, upon such terms as might be agreed upon by those having charge thereof; and that even if the said grant had been defective, the respondents having acted under colour of right, and expended large sums of money in prosecuting their work upon the faith of such grant, and under the eyes, and acquiescence, and approbation of the complainant, and other commoners, they are now estopped in equity from questioning the respondents' title, or in any other way interfering therewith.

" These are the principal matters alleged in the bill, and admitted or denied, or alleged in the answer.

" Before the hearing of the cause, a motion was made by respondents' counsel, to suppress the testimony of all the witnesses on the part of the complainant (except that of James Marshall), on the ground of interest.

" The complainant claims the interposition of this Court on four grounds :

" 1. That his common of pasture is destroyed.

" 2. That the acts complained of in his bill, and proved or admitted, are a nuisance.

" 3. The violation of a trust by the City Councils, in granting the license in question ; and

" 4. That the defendants should be restrained within their corporate powers.

" These propositions will be *very briefly* considered in their order.

" 1st. As to the plaintiff's common of pasture—Is the injury to the plaintiff's right of common in the ground occupied by the said railroad, of such a nature as to call for the interposition of a chancellor by injunction ? Is the injury so great and irremediable at law, as to justify this Court in enjoining the defendants from the use of said common ground in the manner and for the purposes heretofore used and intended to be used by them, as charged in the bill, and admitted in the answer ? And is the complainant in a position to ask such interference ? He who comes into equity must do equity. He must neither do, nor omit to do, any act whereby his adversary may have been led into error, and induced to do the acts complained of. He must on all occasions act and speak consistently with his alleged rights, and

[Bell *v.* Ohio and Pennsylvania Railroad Company.]

if he fail in this respect, he will afterwards be compelled to keep silent when he might wish to speak out.

"Prior to the organization of the railroad company, the complainant's right to pasturage on the common ground surrounding the original town of Allegheny is conceded; indeed, it could not be denied, as the same was secured to him as an *in-lot* holder by Act of Assembly. We must therefore inquire whether that right it still in him, or whether he has lost it, either by operation of law or his own conduct.

"The various Acts of Assembly bearing on this question are referred to either in the bill or answers, and detailed histories of this common ground, and the rights of the commoners, are given in the cases of the Trustees of the Western University of Pennsylvania *v.* Robinson and others, (12 *Ser. & R.* 29; Carr *v.* Wallace, 7 *Watts* 394) and other cases tried in this Court, to which reference is made for the sake of more minute information.

"At the time this company was chartered, the right of common of pasturage was vested in the complainant, the right of sale or title to these commons was vested in the city of Allegheny, while the right of eminent domain of course rested in the state.

"The defendants allege this right is gone, on two grounds. First: By virtue of license from the City Councils, which, as trustees of the legal title, they were empowered by the Act of the legislature to grant; and secondly: By complainant standing by and looking on while respondents entered under colour of title, expended large sums of money, and made valuable improvements.

"First as to the license:

"The eleventh section of an Act passed the 11th of February, 1848, by the legislature of Ohio, adopted by the Act of 11th April, 1848, by the legislature of this state, incorporating the Ohio and Pennsylvania Railroad Company, provides as follows: "If it shall be necessary in the location of any part of any railroad to occupy any road, street, alley or public highway, or ground of any kind, or any part thereof, it shall be competent for the municipal, or other corporation, or public officers, or public authorities, *owning or having charge thereof*, and the railroad company, to agree upon the manner and the terms and conditions upon which the same may be used or occupied: and if *said* parties shall be unable to agree thereon," then the company may apply to the Court of Common Pleas for the appointment of three disinterested freeholders to view the ground, and determine upon the manner and terms upon which the same shall be used, &c.

"Respondents contend, that, under this section the Select and Common Councils of Allegheny were authorized to agree with them upon the terms upon which they might use and occupy the portion of the South Common ground now in their possession. If

[Bell *v.* Ohio and Pennsylvania Railroad Company.]

this construction be correct, it cannot be denied that the Councils, by their resolution of 15th August, 1850, and the supplement of 12th October, 1853, did authorize the company to construct their road over the South Common, as they have done.

" But the complainant denies the power of the legislature, after having vested the title to the common ground in the city for public purposes, to change that disposition so as to authorize the Councils to grant the license in question to the railroad company. In other words, that when the legislature has made a grant for public purposes, the right of eminent domain is exhausted, and she cannot afterwards lend or abridge that right, so as to devote it to other purposes.

" If this were so, the idea of sovereignty would sink to the level of individual right, and the state having once parted with her title either to the public or an individual, could never resume it either for her own use, or that of public improvements by corporations. This doctrine is not only at variance with the very existence of sovereignty, but with the settled practice of every civil government, claiming and exercising sovereign powers. The right of eminent domain is inalienable and inexhaustible, and consequently may be exercised as often as the sovereign power may choose, within the provisions of the constitution as to compensation.

" It rests with the legislature to judge of the cases which require the operation of the right of eminent domain ; and it may be applied to the case of roads, turnpikes, railways, canals, ferries, &c., provided there be, in the assumption of the property, evident utility and reasonable accommodation as respects the public : Cotrill *v.* Myrick, 3 *Fairfield* 222; Dyer *v.* The Tuscaloosa Bridge Company, 2 *Porter's Rep.* 296 ; Harding *v.* Goodlett, 3 *Yerger* 41 ; Chancellor WALWORTH in 18 *Wend.* 14, 15.

" In the case of Charles River Bridge Company *v.* Warren Bridge, 11 *Peters* 420, Chief Justice TANEY declared ' that public grants were to be construed strictly, and that nothing passed as against the state by implication, in diminution of the legislative powers requisite to accomplish the end of their creation. It was accordingly decided, that the grant, by statute, to the Charles River Bridge Company, of the right founded on a valuable consideration to build a bridge over that river, and to take toll, contained no engagement from the state of Massachusetts, nor any implied contract, that the privilege to erect another bridge contiguous thereto, and on the same line of travel, and which might create competition, and diminish or destroy its income, should not be granted within the period of the operation of the grant; that as no grant of any such exclusive privilege, or any contract of the kind was *expressed*, none was to be intended or inferred. There was no constructive franchise, or privilege

admitted, and the decision rested on legislative sovereignty, and its all surpassing powers.'

" The same latitudinarian doctrine was declared, after a very elaborate discussion, in the case of Tuckahoe Canal Company *v.* Tuckahoe Railroad Company, in the Court of Appeals in Virginia, (11 *Leigh* 42.) As there was no *express* provision in the charter against the exercise of legislative power to charter other and rival companies for transportation along the same line, parallel and contiguous, it was held that the legislature might lawfully, and in their discretion, exercise the power ; though it might, in effect, impair or annihilate the profits of the prior company. And Greenleaf says, that in the case of the Charles River Bridge Company, Chief Justice MARSHALL, who heard the first argument in the case, concurred with the majority of the Court in the principle of the final decision. And Chancellor KENT says, the Charles River Bridge case is now not merely acknowledged universally, but its doctrine has been carried to an extent far beyond the reasoning of Chief Justice TANEY. It was held in Enfield Toll Bridge Company *v.* Hartford and N. H. R. Co., 17 *Conn. Rep.* 474, that a provision in the charter of the Bridge Company, that no person shall have liberty to erect another bridge within certain defined limits, was not a covenant distinct from the franchise, but identical with it; and subject to the same laws. See also, Thompson *v.* The New York and Harlem R. Co., 3 *Sandford Ch. R.* 625 ; Oswego Falls Bridge Co. *v.* Fish, 1 *Barb. Ch.* 547.

" If any other authorities were necessary to establish this doctrine, they are to be found in numerous cases in our own state, arising out of Acts of the legislature incorporating companies to improve navigable rivers by locks and dams, previously declared public highways (Coon *v.* The Mon. Nav. Co.), and authorizing turnpike companies to take public highways as the bed of their roads—municipal corporations to take and use landings on public rivers as wharves, and charge wharfage therefor ; as well as many other similar cases, which it is deemed unnecessary to notice.

" What right does the complainant claim here, which is deemed too sacred to be touched by the power of the legislature? It is a mere private right—a right to pasture his cattle on the common ground—a mere easement, appurtenant to his town lot—an incorporeal hereditament arising out of his title thereto. But if the legislature has power to authorize the taking of the lot itself, which cannot be denied, *a fortiori* this mere right appurtenant may be taken by making due compensation therefor. If you take away the substance, the shadow follows as a matter of course. The doctrine here contended for by complainant, would put it in the power of any one commoner for ever to prevent the improvement of this common ground, and keep it in its present condition.

"Let us next consider the second ground of defence taken by respondents, viz.: that complainant, by standing by and looking on while they entered upon this common ground, under colour of title, expended large sums of money, and made valuable improvements, without objection, is estopped in equity.

"The evidence in the case showed that respondents located and constructed their road over the ground in question at great expense, in full view of the complainant, without objection on his part—and that they used and occupied the said ground, for a period of more than two years, without remonstrance or complaint by plaintiff.

"If A. constructs a work with the consent of B., either express or implied, equity will not afterwards restrain him by injunction, at the instance of B., although the work proves injurious to B.; 3 *Gren. Ch.* 116; nor from erecting further buildings necessary for the use of, and connected with the former: *Ib.* And in a note to the 2d vol. of Eden on Injunctions, 372, it is said, "it is here proper to observe, that in the case of a party complaining of injury from the execution of works, such as those of a railroad company, it is even more incumbent on him than in ordinary cases, to apply without delay for relief: and that, as the injury to the defendants in being stayed (if it shall ultimately turn out that they are acting lawfully) is great in proportion to the magnitude of their operations, the Court will in general hold even slight acquiescence on the part of the complainant, a bar to his obtaining an injunction: 1 *Swanston* 245.

"If a party is cognisant of his right, and does not take those steps to assert it which are open to him, before he has allowed his adversary to incur material expenses, or to enter into engagements difficult to be discharged, he will lose his right to the interposition of equity: 1 *Railway Cases* 66.

"But let us see what has been held by our own Courts, in regard to this very right of common now under consideration. In the case of The Trustees of The Western University of Pennsylvania v. Robinson and others, 12 *Ser. & R.* 34, Chief Justice Tilghman says: 'Now it is understood that the Allegheny lotholders were of opinion, that the erection of the penitentiary on part of the common ground was for their interest, without further compensation; and on this understanding the building has been erected, at a very great public expense. After this acquiescence, the proprietors of the lots are bound. It amounts to a contract. It is equivalent to a release *pro tanto.*'

"This principle is cited with approbation and reaffirmed by the Supreme Court, in Carr v. Wallace, 7 *Watts* 400, and Mr. Justice Rogers, in delivering the opinion of the Court, says: 'It has also been held, that when leave or license to build a college on a common is given by a commoner, by parol, he can bring no

[Bell *v.* Ohio and Pennsylvania Railroad Company.] .

action for the encroachment, though no sufficient common be left: 11 *Com. Law R.* 347. With a full knowledge of their rights, the commoners took the various steps which have already been detailed, to induce the General Assembly to locate the Seminary within the limits of the town. It seems no other contract was given; but the question is, whether the conduct of the plaintiffs does not amount to an implied license to erect the buildings and occupy the grounds; and if any case can be imagined when such leave or license can be implied, the case is here presented. After two or three successive public meetings of the commoners, the legislature, at their request, pass an Act vesting the property in trustees, for the use of the seminary. Having obtained the consent of all persons interested, as was supposed, after great pains taken for that purpose, a building is erected, which takes *two or three years* in the erection. The building is in the *full view of the plaintiff*, but during all the time he makes no manner of objection, nor does he whisper a complaint, although he is fully aware that they are spending large sums of money under the belief, not hastily or recklessly formed, that the title was superior to all exception. What right has the plaintiff, under these circumstances, to complain of the disturbance of his right of common? There is no principle better settled, nor one founded on more solid considerations of equity and public utility, than that which declares that if one knowingly, though he does it passively by looking on, suffers another to purchase and spend money on land, under an erroneous opinion of title, without making known his claim, he shall *not afterwards be permitted to exercise* his legal right against such person. It would be an act of fraud and injustice, and the conscience of the plaintiff is bound by the equitable estoppel. Here, then, would be at least a negative fraud, in imposing on the defendants by his silence; for his silence would be treacherously expressive. In equity, when a man has been silent when in conscience he ought to have spoken, he shall be debarred from speaking when conscience requires him to be silent.'

"And in the case of the Trustees of the General Assembly of the Presbyterian Church *v.* George R. Riddle, tried in this Court in 1844, when the same question arose in regard to this common, HEPBURN, President Judge, in his charge to the jury, speaking of the wife of said Riddle, a commoner, says: 'We are of opinion, therefore, that her rights were protected during her minority. But since she became of full age, twelve years have elapsed; the property during all that time has been most conspicuously in possession of the plaintiffs, and immediately under the eye of Mary Ann, when single, and of herself and husband since their marriage; and valuable improvements have been made thereon almost every year during that time—improvements which, on an ordinary

[Bell *v.* Ohio and Pennsylvania Railroad Company.]

property, would be accounted of great value, and sufficient to enforce the application of the rule under consideration, against a party acquiescing therein. The defendants, by their long acquiescence, since the minority of Mary Ann, having encouraged the plaintiffs to proceed with their improvements, are in equity postponed, and are not permitted to assert their legal rights against those whom they have thus encouraged to expend their money under any erroneous opinion of title. To suffer the defendants now, or any others under their cloak, to disturb the plaintiffs in the enjoyment of their property, erected at so great a cost, and after so urgent solicitation to place their buildings at that spot, by one tacitly assenting for so long a time to their title, would be contrary to all equity, and fraught with the greatest injustice.'

" Such are some of the authorities bearing directly on this question. How does it stand on principle? It must be borne in mind that this common ground differs from most public squares or grounds laid out and dedicated to the public by proprietors of towns or cities. It never was dedicated to the public generally.

" In the case of the Western University, before cited, TILGHMAN, C. J., says: ' But that a right of common in one hundred acres of land on the Allegheny river, should be reserved for the use of all the citizens of Pennsylvania, is an absurdity too great to be attributed to the legislature; nor are there any words in the Act from which such an intention can, with any plausibility, be drawn.' And in the case of Carr and Wallace it is decided that the right of common of pasture belonged exclusively to the owners of in-lots; and that the owner of an out-lot had no right of common of pasture there whatever.

" The complainant can assert no other or greater claim to this common than merely the right to depasture his beasts thereon. In every other respect he stands on the same footing with the *outsiders*, or those who live on the *outside* of the commons. The evidence in this case shows what is known to all, that the complainant's right of pasture was a *common right*, of no material or appreciable value or nature; that no grass or herbage worthy of notice has grown thereon for more than twenty years; nor has it been shown that it was *ever* used for such a purpose by the plaintiff, or that he contemplates or desires to use it as a pasture ground. So that perhaps even the doctrine of the loss of plaintiff's right by *nonuser* might possibly be applied here, if it were necessary, to prevent the injustice that would follow an injunction in this case.

" Suppose the defendants, instead of agreeing with the Councils on the terms upon which they might occupy the ground in controversy, had made application to the Court of Common Pleas, under the Act of incorporation, and three disinterested freeholders had been appointed to determine the question betwen them and the commoners, what amount of damage would they have awarded to

[Bell *v.* Ohio and Pennsylvania Railroad Company.]

the present complainant for his right of pasturing his beasts on this strip of fifty feet wide, on the south side of the South Common, especially when the fact is taken into consideration, that every other owner, or part owner, of an interest in the town of Allegheny, had the same right to put any number of animals he pleased on the same strip of ground. It seems to us, it would require a very thorough knowledge of *decimal fractions* to make an accurate calculation of his damages.

"It is not surprising, then, that, with a claim so utterly valueless, he should have looked on, made no objections, while respondents were building their road, inferring, no doubt, in common with the Councils, who subscribed largely to the construction of this road, that it would be both a public and private benefit and blessing, and that the advantages would be immense in proportion to the contiguity of the depot.

"He saw the operations of the defendants from the time when they commenced grading the ground in question, in 1850, for a period of some two and a half years; for their works were all carried on under his immediate observation, from his residence, which is only a few rods off. He saw them expending large sums of money in these operations, and it was his duty then to assert his right, if he had any, as we have seen by the authority of all the cases cited; and not having done so then, he will be estopped in equity from asserting it now. If this would be the case where the right thus lost by laches might be valuable, how much more should the principle apply here, when, as we have seen, the claim is without any value whatever. Under such circumstances, chancery will never interfere. The Court will not interfere by injunction to protect the enjoyment of an ancient right, of little importance, and seldom used: Wilson *v.* Cohen, *Rice*, ch. 80.

"But have the defendants the right to the use of the stone wall and platform, as the same are now constructed and used by them? in which construction and use the complainant has not acquiesced; and have the defendants the right to erect a car-house or depot over the road, at its terminus on Federal street? It is not necessary to consider whether the license by the City Councils confers this right on defendants or not. That question is not before us. There is no complaint on the part of the city of Allegheny (which alone has the power to make it) that the company has exceeded, or is about to exceed, the powers conferred by the resolutions granting the right of way.

"But conceding that the grant of the right of way did *not* confer the right to erect and use the platform or passenger depot, has the complainant a right to insist upon the removal of the former, or to require that the erection of the latter should be enjoined? His right of common of pasture is already lost, as we have seen, by his own supineness; and it is difficult to presume what further

[Bell *v.* Ohio and Pennsylvania Railroad Company.]

injury it can sustain by the erection or continuance of either or both. But in our opinion, the erection of a depot and car-house over the road (*without doors* opening out on the residue of the common, which, under their present license, they would have no right to place there so as to receive or discharge freight or passengers upon or from the common ground), would *diminish*, rather than increase, the annoyance complained of.

" The second ground of claim on part of complainant is, that the said road, cars, engines, cattle, freight, &c., as used, received, and discharged, are both a public and private nuisance, disturbing his quiet and peaceful enjoyment of his habitation, and diminishing the value of his property. This, if true, is a very serious inconvenience indeed. But is it such, under all the circumstances, as to call for the exercise of the extraordinary power of a Court of Chancery by injunction ?

" A nuisance is anything which unlawfully and tortiously does hurt, or causes inconvenience or damage : 2 *Bouv. In.* 503. It is difficult, says the same learned author, to define what *degree of annoyance* is necessary to constitute a nuisance. A private nuisance, says Blackstone, is anything unlawfully or tortiously done to the hurt or annoyance of the person, or the lands, tenements, or hereditaments of another : 3 *Bl. Com.* 215.

" What degree of annoyance will constitute a nuisance, must always depend upon the special circumstances of every case. Certain sounds would be considered *nuisances* by some, and *music* by others. As, for instance, the chiming of church bells, the blowing of horns or trumpets, the lowing of cattle, the sound of the forge-hammer, the whistle of the steam-engine, and the sound of the drum and fife. And this depends more or less on the proximity or distance of the different sounds. It is not every annoyance that is 'unlawful and tortious,' indictable or actionable, and more especially is that the case in towns and cities, in these modern times of progress and improvement. But is a Court of Chancery called upon to decide those questions of fact which are so difficult and doubtful, when the Courts of law are open to the party, where they can be determined by the verdict of a jury ? An injunction *may* be granted to restrain a public nuisance at the suit of a private person, who suffers a special injury thereby : 6 *Johns. Ch.* 439. But equity will not interfere in case of a nuisance, except to prevent *irreparable* injury : 4 *Hen. & Mun.* 474.

" When the thing sought to be prohibited as a nuisance is in itself a nuisance, the Court will interpose ; but if not unavoidably and in itself noxious, but only something which may, according to circumstances, prove so, the Court will refuse to interpose until the matter has been tried at law : Gwin *v.* Milmoth, 1 *Freem. Ch.* 505. To justify the interference of a Court of equity to restrain a nuisance, the right of a complainant must be clearly established,

[Bell *v.* Ohio and Pennsylvania Railroad Company.]

and it must appear that there is danger of immediate and irreparable injury: Caldwell *v.* Knott, 10 *Yerger* 209. The Court will not interfere by injunction to restrain an erection not in itself noxious, though it may, according to circumstances, prove so, until a trial of the right at law, except where an action could not be framed to meet the question, when the Court may direct an issue: Mohawk Bridge Co. *v.* The Union and Schenectady Railroad Co., 6 *Paige Ch. R.* 554. An act tending merely to diminish the value of a man's house, or to shut out a pleasant prospect, was recently held in England not to be a nuisance: 9 *English Law and Equity R.* 116, 122. Many other cases might be cited; but these are deemed amply sufficient to justify a refusal to interfere by injunction, on the ground of nuisance, under the circumstances of this case.

"It does not appear here that defendants create any more noise or confusion than is usual or customary under similar circumstances, or than is necessary and unavoidable in carrying on the trade and business of their road. To deny to them, therefore, the use of their road, would, in effect, be to exclude all railroads from our towns and cities, after these corporations have chiefly contributed to their construction—to debar the right to steamboats to land at our wharves, to discharge and receive freight and passengers—to stop the passage through our streets of the hundreds of hacks, omnibuses, drays, and carts, necessary to convey freight and passengers between the *outer* depots, and drive them round the city limits—to stop all machinery of every description, driven or propelled by steam—to stop all public markets which produce noise and disturb the citizens residing adjacent thereto, and restrain the use of coal, as fuel, because of the intolerable annoyance occasioned by its smoke. It should be borne in mind that we live in an age and a country of progress and improvement, in all the business departments of life. New branches of business are constantly springing up on every hand. The inexhaustible resources and capabilities of the country are being rapidly developed, by the ingenuity, energy, and enterprise of our citizens. The unparalleled increase and improvement in agriculture, commerce, and manufactures, demand increased facilities in travel and transportation. These, and many other considerations, require the modification of former rules, and judicious application of the expansive principles of the common law to the altered condition of the country and the necessities of the public. The common law is said, and with great truth, to be the perfection of human reason. It is the embodied justice and wisdom of each successive age, moulded and formed into a system adapted to the habits and wants of the current times.

"These remarks are made for the purpose of showing, that what would at one time have been held to be a nuisance, might not, and

[Bell *v.* Ohio and Pennsylvania Railroad Company.]

probably would not, be so considered now. Private interest and comfort must often yield to public necessity or convenience. This, we apprehend, must be the case here. If the company had authority to make their road where it is, with its terminus at Federal street, they are entitled to the ordinary and necessary uses and advantages of their position, and would not be responsible for any unavoidable annoyance or disturbance such uses might cause. To permit and encourage them to construct their road at a heavy expense,·and then deny them the privilege of using it for the ordinary and necessary purposes of such a work, would be inconsistent with every principle of justice and common sense.

" The *third* ground of claim on part of complainant is : The violation of a trust by the Councils of the city, in granting the license in question.

" It is difficult to perceive how this question can arise between the present parties to this bill. The complainant is a private citizen of the city of Allegheny—the respondents are strangers to the municipal corporation. The complainant alleges that the corporation of said city is the trustee of this common ground, and that he is a *cestui que trust.* If he claims that his trustee has violated the trust, he should have made the trustee a party to his bill, in order that the trustee might come in and defend against the alleged breach of trust. Otherwise, the trustee might be condemned without a hearing, and without a day in Court. It seems clear to us, therefore, that this ground of claim is not well taken, and cannot, therefore, be sustained.

" The *fourth* and last ground taken by the complainant is, that defendants should be restrained within their corporate powers. This point has been already incidentally noticed. We do not perceive any evidence of their having transcended their corporate powers; but if the fact were otherwise, we are of opinion that the city of Allegheny, being the trustee of this common ground, would be the proper party to complain—and not the present plaintiff, whose only right to this common ground was lost before the filing of this bill, by his own negligence and supineness.

" The perpetual injunction is denied, and the bill of complainant dismissed."

*Hepburn,* and *C. Shaler & Co.,* for complainants.—The defendants claim to exercise the powers asserted by them : 1st, by the 11th section of the charter of the company, authorizing them to agree with officers and authorities having charge of common grounds ; 2d, by resolution of the City Councils granting the right of way over the common ; and, 3d, by acquiescence of complainant in permitting the company to locate their road over the common.

1. No right to appropriate a common is conferred by the charter. A common is neither " road," " street," " alley or public

[Bell *v.* Ohio and Pennsylvania Railroad Company.]

way," or "ground of any kind." It is private property, which enures to the use of lot-holders; nor is the use a public use: Western University *v.* Robinson, 12 *Ser. & R.* 29.

The power granted to the city authorities to agree with the railroad company, by the 11th section of their charter, implies that there shall be no infringement upon private rights.

The state became a trustee for the lot-holders, by laying out and surveying the town; and by the Act of 13th April, 1840, provides, that no part of the common shall be applied to. other purposes without releases first obtained from such persons as have the right of common, or such as may by law release the whole or a part thereof.

A grant of a right of way, if good, does not confer the power to construct a *permanent* platform, erect buildings, and use the common as a place of deposit. And if these things were not implied in the laying out of the road over the common, the company have acquired no right by the alleged laches of the complainant. The grant of a right of way does not include the right to remain on the common.

The complainant is entitled to relief in equity: 2 *Story's Eq.* §§ 921, 924; *Eden on Inj.* ch. II., p. 259; 2 *J. C.* 430, 272. Everything that renders the enjoyment of life and property uncomfortable, is a nuisance: *Eden on Inj.* 264; 4 *Dick.* 164; *Eden on Inj.* 264.

Equity will restrain acts in violation of an easement, or right belonging or attached to adjoining premises: Seymour *v.* McDonald, 4 *Sand. Ch. Rep.* 502; 2 *Eden on Inj.* 265.

And will prevent grounds from being built upon, which the complainant has a right to have kept open, though the encroachment be small and the right appear unreasonable: Hills *v.* Miller, 3 *Paige's Ch. Rep.* 258.

The powers of corporations are subject to equity jurisdiction in the protection of individual rights: Agar *v.* The Regent's Canal Company, *Cowper's Rep.* 79.

It is not necessary in all cases to show irreparable injury: River Dun Navigation Company *v.* North Midland Railway Company, 1 *Railway Cas.* 135. As where the company exceeds its powers: *Id.* The supervision of corporations was one of the express chancery powers vested in the Courts of this state by the Act of 1836.

*T. Williams* and *W. S. Courtney*, for respondents.—No Court of equity has ever awarded an injunction for that which is not a nuisance *per se*, without a previous trial.

The substance of the complaint is the disturbance of a right of common of pasture.

The case shows that there has been no pasture on the ground

[Bell *v.* Ohio and Pennsylvania Railroad Company.]

for more than twenty years, and that it has been used all that period as a common highway.

2d. That the ground has been in possession of defendants for at least two years before this bill was filed.

3d. That they entered under the authority of the Councils, who had the legal title and the control thereof, subject to the easement, and under the eye and acquiescence of the plaintiff.

Is this a proper case for an injunction?

1. If there is a dispute as to the title, equity will only interfere in rare cases with a view to a trial at law: 2 *Eden* 259, note 2; 5 *Met.* 118. And to entitle him to this the plaintiff must show a strong *prima facie* case, and that he has been guilty of no improper delay: 2 *Eden* 259, note 2. Or that the defendant has created the nuisance to the prejudice of a right long enjoyed by plaintiff: 3 *Johns. C. R.* 287. And actual possession is required to dispense with sending a party to law: 2 *Johns. C. R.* 265. At least three years: Brown's Case, 2 *Vesey* 414; 6 *Johns. C. R.* 19. And in the case of an easement, the party complaining must show substantial injury not susceptible of compensation in damages: Moyer *v.* The Commonwealth, 7 *Barr* 365.

2. As to the title of defendant.

The 11th section of the charter provides that the company, when it shall be necessary to occupy any *public way or ground,* may agree with the corporate authorities having charge thereof, upon the terms on which the same may be used or occupied; and the city did grant a license to the company to occupy the premises. It is said the common is not "*public ground,*" but an easement (see Commonwealth *v.* Rush, 2 *Harris* 186); and that the city corporation holds it in trust; that it shall be applied to no other purposes without releases from the commoners. But the answer is that, the legislature has made the appropriation. in the. exercise of its right of eminent domain; and the corporate authorities having charge of it are wisely invested with the power of settling its terms; and there is no violation of the. trust in allowing the right of way.

Acquiescence by the plaintiff for two years is a conclusive answer to the whole case: Carr *v.* Wallace, 7 *Watts* 394. The slightest laches will operate as a bar in a case like this: 2 *Eden* 372, note 2; Agar *v.* Regent's Canal, 1 *Swanst.* 245; Attorney-General *v.* Cleaver, 18 *Vesey* 211; 2 *Eden* 274–5.

The company have the right to stop and discharge, or load their cars at any point upon their own track, and this *ex necessitate,* as essential to the enjoyment of the road itself; and, as the road was to terminate at Federal street, a stoppage at that point was unavoidable. And so was it necessary in receiving and discharging freight and passengers; and for this purpose a platform, if in their judgment required, would be altogether proper. The plat-

form complained of occupies no more ground than that previously appropriated under the eye of complainant. And if an estoppel arose out of the appropriation and acquiescence, it extended to all cases for which the ground might have been lawfully taken.

The opinion of the Court was delivered by

Lewis, C. J.—This is a bill by one who claims common of pasture in certain land called the South Common in Allegheny City. The prayer is for an injunction to restrain the railroad company from using any part of the common for the purposes of the railroad. By the Act of 11th September, 1787, the purchasers of in-lots in the town became entitled to common of pasture in 100 acres of land reserved for the purpose by the state when the lots were sold by her authority. The right of the state has since been transferred to the City Councils, and the latter, in consideration of the sum of $300 annually, have granted to the railroad company a perpetual lease of the right of way through the common of the width of fifty feet. Under this grant the railroad was located and constructed in the summer of 1851. No objection was made by the plaintiff to this proceeding for about two years, although it took place under his view. The South Common, before the grant to the railroad company, was a strip of land of the width of 144 feet. It has not been enclosed. It has been as open to the public at large as to the commoners themselves. The herbage is about as abundant as that which might be found in a recently disinterred street of Herculaneum. The plaintiff's right to take the herbage by the mouths of his cattle is of no appreciable value. Neither he nor those under whom he claims the lot to which the common is said to be appurtenant, have exercised the right within twenty-one years. But, on the other hand, neither the state nor the City Councils, while owning the soil, have exercised acts of ownership adverse to the plaintiff's claim. The Act of 13th April, 1840, is relied on as containing an acknowledgment of the right of common. We may concede for the present, without, however, deciding the point, that this recognition, together with the absence of any adverse enjoyment or claim, may be sufficient to preserve the right of common of pasture from the influence of *nonuser.* But these circumstances will not preserve it from destruction by the positive acts of the commoner himself. The evidence is sufficient to show that about forty years ago the owner of the lot claimed by the plaintiff gave twenty feet from the rear of his lot, for the purpose of widening a twenty feet alley, called Water Alley, into a street of the width of forty feet, and that at the same time he extended this front line of his lot, so as to enclose twenty feet of the land in which he claims common of pasture. The same thing was done by the other lot-holders, whose lots were situated between the South Common and Water Alley. Water

[Bell *v.* Ohio and Pennsylvania Railroad Company.]

Alley, thus widened, has been paved by the City Councils, and used by the public as a street ever since; and the portions of the common thus enclosed by the lot-holders, have been held by them in severalty as their own for the same period of time.   The common itself, immediately in front of these enclosures, has been used more as a public thoroughfare than as a pasture ground, and no one can fail to perceive that this is more for the advantage of the adjoining proprietors than any right of pasturage which they could possibly enjoy in the land.   After the lapse of forty years, and the positive acts of the City Councils in recognition of the exchange, the law will presume that the transaction was in pursuance of a valid purchase of a portion of the land subject to common of pasture by the parties entitled to the easement.   That this presumption stands good, until some one whose interest is disputed thinks proper to dispute it, there can be no doubt whatever.   Neither the commoners nor the owners of the fee have disturbed the arrangement.   On the contrary, for obvious reasons of mutual advantage, all parties have acquiesced for forty years.   What, then, is the effect of this purchase by the commoner of a part of the land in which he claims common of pasture?   There is a distinction between common appendant and common appurtenant in this important particular, that, if he who has common appurtenant purchases parcel of the land subject to the easement, all his right of common is extinct; or, if he takes a lease of part of the land, all the common is suspended; because it is the folly of the commoner to intermeddle with the land; his common appurtenant was against common right, and he cannot common in his own land which he has purchased.   This principle was expressly decided in Kimpton and Bellamy's Case, 1 *Leonard* 43; in Tyringham's Case, 4 *Coke* 38; in Wyatt Wild's Case, 8 *Id.* 79, and in numerous other cases.   It was said in Tyringham's Case, that common appurtenant cannot be extinct in part and be *in esse* for part, by the act of the parties.   These principles were fully recognised by this Court in the case of Carr *v.* Wallace, 7 *Watts* 397.   It is only necessary to add that the origin and nature of the right claimed in this case show that it is a right of common appurtenant. The result is that the plaintiff's right of common of pasture is extinguished.   And the same result follows if the enclosure be regarded as only a disseisin.   This renders it unnecessary to consider his claims to the light, air, and prospect, supposed to be incidents of the right of pasture.   The incidents fall with the principal.   But if this were not so, it would be easy to show that the right to take the herbage by the mouths of his cattle gives the commoner himself no incidental right to keep the common open as an ornament to his dwelling, or as contributing to his own personal pleasure or convenience.   He is a trespasser if he sets his foot upon it, except when in the necessary attendance upon his

[Bell *v.* Ohio and Pennsylvania Railroad Company.]

depasturing cattle.  He may be excluded from all view of the common by hedges, gates, or walls, so that his cattle are not thereby kept out or prevented from enjoying the common as before : 5 *Viner's Abr.* 7 ; 1 *Burrows* 265 ; 2 *Mod.* 66 ; 3 *Cruise's Dig.* 95.  It is, for the same reason, unnecessary to discuss the effect of the plaintiff's acquiescence in the construction of the railroad under a grant from his own municipal representatives, upon a consideration beneficial to himself as a tax-payer.  By similar acquiescence, the commoners lost their right of common in the ground covered by the Western Penitentiary : Western University *v.* Robinson *et al.,* 12 *Ser. & R.* 34 ; and again by the same means they lost their right of common in the ground occupied by the Theological Seminary : Carr *v.* Wallace, 7 *Watts* 400. It is true that there is no acquiescence here in the exercise by the railroad company of any right beyond the fifty feet granted by the City Councils.  But as the plaintiff's right of common is extinguished entirely, he has no interest sufficient to call for this extraordinary remedy to restrain the railroad company from trespassing upon others.

The annoyance alleged to arise from the necessary uses of the railroad, is not a nuisance *per se.*  The learned president of the District Court has shown that, until this be determined by a jury to be a nuisance *in fact,* the Court will not interfere by injunction on that ground.

On the whole, the decree of the District Court, denying the injunction and dismissing the bill, ought to be affirmed.

Mr. Justice WOODWARD concurs in this opinion.  Mr. Justice LOWRIE did not sit in the case.  The other two judges are in favour of granting the injunction.  The Court being equally divided, the result is that the decree of the District Court stands affirmed.

Decree affirmed.