# Weitershausen, Appellant, *v.* Fairman.

*Land law— Common land— Municipalities— Possession— Streets— Acts of September 11, 1787, 2 Sm. Laws, 414, and April 13, 1840, sec. 13, P. L. 303.*

Where land reserved under the Act of September 11, 1787, 2 Sm. Laws, 414, as common land for a common pasture became vested in the city of Allegheny by the Act of April 13, 1840, P. L. 303, but about 1815 a strip of twenty feet thereof was exchanged for another strip of twenty feet back of adjoining lots, so as to widen a street in front of the lots, and this land thereafter remained in undisputed possession of the lot owners for nearly 100 years, with the approval of the city, the title to it is good in the lot owners, although there is no record of any proceedings by which the exchange was effected.

Argued May 15, 1912.  Appeal, No. 185, April T., 1912, by plaintiff, from judgment of C. P. No. 3, Allegheny Co., Feb. T., 1905, No. 684, on verdict for defendant in case of W. F. Weitershausen v. John A. Fairman and Harry T. Fairman, Administrator of the Estate of Robert J. Fairman, and Laura E. Fairman.  Before RICE, P. J., HENDER-

170  WEITERSHAUSEN, Appellant, *v.* FAIRMAN.

Statement of Facts—Opinion of Court below.  [52 Pa. Superior Ct.
SON, MORRISON, ORLADY, HEAD and PORTER, JJ.  Affirmed.

Assumpsit for hand money paid for real estate.
Verdict for defendant.  Plaintiff appealed.

EVANS, J., filed the following opinion:

The facts in this case are not in dispute.  On June 17, 1903, the plaintiff entered into an agreement with defendants for the purchase of certain real estate, fronting twenty feet on Federal street, in the city of Allegheny, now the Northside, city of Pittsburg, and extending back along Fountain street, formerly Stockton avenue, sixty feet; and the plaintiff paid to the defendant, as hand money, the sum of $750.  By the terms of the agreement, the hand money was forfeited, unless the purchaser performed his covenants in the agreement. The purchaser sues to recover back the hand money, alleging that the defendants have not a fee simple title to the property.

The lot in question was a part originally of what was known as South Common, in the city of Allegheny. About 1815, the lot fronting sixty feet on the South Common, at the corner of Federal street, extended northwardly 240 feet to Water alley, an alley twenty feet wide.  About that time, Water alley was widened to a width of forty feet, and the twenty feet necessary to widen the alley was taken off the lots to the south, between that alley and South Common; and the lot holders extended their fence line, taking in twenty feet of the Common ground.  The borough of Allegheny was subsequently organized, and in 1840 the city of Allegheny was organized.  Water alley was improved the full width of forty feet, as Park way, either by the borough of Allegheny or the city of Allegheny, was paved, and has from that time to the present been occupied by the public as a public street.  Stockton avenue was laid out by the city of Allegheny, improved and paved, on a part of

the South Common, immediately adjoining on the south the line of the lots as extended in 1815. There is no record of the proceedings widening Water alley, and no record authorizing an exchange of the twenty feet of private land, taken for that widening, for twenty feet of the Common ground on the south.

It is claimed by the plaintiff that the title to that land in 1815 was in the state of Pennsylvania, subject to an easement of the lot owners for pasturage, and that the title to that land is now in the city of Allegheny, by virtue of the Act of April 13, 1840, sec. 13, P. L. 303, which vested the land in the city of Allegheny "For such public uses as were recited in the Act of 11th of September, 1787, or such public uses as the select and common councils might from time to time direct and ordain: provided that no part of the lands allotted by the fourth section for a common shall be applied to any other purpose, without releases first being had and obtained from such persons as might by law grant a right to the whole or any part of said common." This strip of land, with the other Common ground in the City of Allegheny, was, by Act of September 11, 1787, 2 Smith's Laws, 141, empowering the state to lay out a town with outlots, reserved "For the use of the state so much land as they shall deem necessary for a court house, jail and market house, for places of public worship, and for burying the dead, and without the said town one hundred acres for a common pasture."

It is well settled that the city of Allegheny, under its grant from the state, may not use any of the public ground so dedicated except for public uses. But if there was an exchange of a part of the common ground for other ground to be used for public purposes, that would be within the power of the city of Allegheny. But this exchange was made long before either the city of Allegheny was created or the borough of Allegheny was created. It was made while the district was known as the town of Allegheny. What municipal government

it had, we are now able to ascertain.  The fee at that time was in the state; and while it is true that the statute of limitations will not run against the state, yet we take it that, after the lapse of nearly 100 years, where the known facts point conclusively that an exchange was made, the law will presume that the necessary steps were taken to validate that exchange.  And, while all records may be lost, and probably not very accurate records were kept, the long acquiescence both of the state and of the city of Allegheny, and every act of the municipality, ratifying and confirming the exchange, the courts will not disturb the situation, but assume that what was necessary to be done in order to make this exchange valid was done at the time.

While the questions at issue in this case were not decided in the case of Bell v. Ohio and Penna. Railroad Company, 25 Pa. 161, yet the subject of this exchange was discussed by LEWIS, C. J., in his opinion, and, while only forty years had elapsed at that time, the learned chief justice assumed that the transaction of exchange was a valid one.

The motion for judgment for the plaintiff non obstante veredicto is dismissed.

*Error assigned* was the order of the court refusing judgment for plaintiff n. o. v.

*E. W. Arthur*, with him *W. S. Thomas*, for appellant, cited: Western University of Pennsylvania v. Robinson, 12 S. & R. 29; Carr v. Wallace, 7 Watts, 394; Mayor of Allegheny v. R. R. Co., 26 Pa. 355; Larkin v. Allegheny, 162 Fed. Repr. 611; Com. v. Rush, 14 Pa. 186; Com. v. Moorehead, 118 Pa. 344; Com. v. Bowman, 3 Pa. 202.

*Charles W. Dahlinger*, for appellee, cited: Larkin v. Allegheny, 162 Fed. Repr. 611.

OPINION BY PORTER, J., November 18, 1912:

The opinion of the learned judge of the court below, in disposing of the motion of the defendant for judgment non obstante veredicto, which will appear in the report of this case, states all the material facts and fully vindicates the conclusion at which he arrived. That opinion renders it unnecessary for us to enter upon any extended discussion of this case. While this proceeding involved only the character of the title of the defendants to a lot twenty feet by sixty feet in size, the same question is presented as to twenty feet in depth of the front of every lot abutting on the north side of Stockton avenue, now called Fountain street throughout the entire length of that highway. This strip of ground, twenty feet wide, and about a third of a mile in length, immediately adjoining the north line of the street, was originally part of the south common. The south common extended along the southern line of the inlots of the town of Allegheny and was a part of the tract set apart under the provisions of the Act of September 11, 1787, 2 Sm. Laws, 414, which authorized the supreme executive council to lay out the town and to reserve "without the said town, one hundred acres for a common pasture." The lots of the town were sold in accordance with the provisions of the statute mentioned, and the purchasers of the inlots acquired, as appurtenant to their lots, a right in the 100 acres without the town for a common of pasture. Water alley was, in the original plan, laid out of a width of twenty feet and extended entirely through the town parallel to the north line of the south common and 240 feet distant therefrom. About the year 1815 Water alley was widened throughout its entire length to the width of forty feet, the additional twenty feet being taken entirely from the north ends of the lots between the alley and the south common; and at the same time the lot holders extended the lines of their lots to the southward, so as to inclose twenty feet of the south common. The lot owners were thus left in possession of the same amount of land which they had held

before the alley was widened, but all the lots were shifted twenty feet to the southward. There is no record of what proceedings were taken to thus widen Water alley, but it is an admitted fact in this case that the lot owners and those who have succeeded to their title have since the year 1815 been in the actual and exclusive possession of the strip of the former south common which was affected by the change. Concerning this transaction it was said, in 1855, by Chief Justice Lewis, in Bell v. Ohio & Pennsylvania Railroad Co., 25 Pa. 161, "Water alley, thus widened, has been paved by the city councils, and used by the public as a street ever since; and the portions of the common thus inclosed by the lot holders have been held by them in severalty as their own for the same period. The common itself, immediately in front of these inclosures, has been used more as a public thoroughfare than as a pasture ground, and no one can fail to perceive that this is more for the advantage of the adjoining proprietors than any right of pasture which they could possibly enjoy in the land. After the lapse of forty years, and the positive acts of the city councils in recognition of the exchange, the law will presume that the transaction was in pursuance of a valid purchase of a portion of the land subject to common of pasture by the parties entitled to the easement." More than half a century has elapsed since the learned chief justice used the above language, in referring to this very strip of land, and during that interval the lot holders, including these defendants and those from whom they have derived title, have continued to hold their respective portions of the strip of ground in severalty, as their own, and the city has opened and improved Stockton avenue immediately in front of the lots as thus extended. Those from whom the present owners of the land have derived title having, almost a century ago, parted with title to twenty feet of the north end of their lots and having built upon and improved the lots as extended a like distance to the southward, it is conceded by the appellants that the

right of common of pasture in the land vested in the owners of the inlots of the town generally must be presumed to be extinguished.   The reservation of the 100 acres as a common pasture, was not a dedication of that land to the public use.   The fee remained in the commonwealth subject to the right of common in owners of the inlots of the town, as appurtenant to such inlots: Western University of Pennsylvania v. Robinson, 12 S. & R. 29.   The right of common was one which the owners of the inlots might release, or modify at their pleasure, and the proprietors of inlots would be bound by an acquiescence, which would amount to a contract, and be equivalent to a release pro tanto, in permitting those who thought they had acquired title to the strip of common to expend money upon the property which they had so acquired: Carr v. Wallace, 7 Watts, 394.   These authorities determine that the south common had not, at the time Water alley was widened and the lot owners entered into possession of the strip of common, been dedicated to a public use.   The title of the commonwealth was vested in the city of Allegheny, for public uses, by the Act of April 13, 1840, P. L. 303.   The prayer of the defendant for binding instructions and his motion for judgment non obstante veredicto were, for the reasons stated in the opinion of the court below, properly refused.

The judgment is affirmed. .