## LARKIN v. CITY OF ALLEGHENY.

(Circuit Court of Appeals, Third Circuit. May 25, 1908.)

### No. 26.

1. MUNICIPAL CORPORATIONS—POWERS—GRANT OF USE OF PUBLIC GROUNDS.

Under the various acts of the Legislature of Pennsylvania relating thereto, as construed by the Supreme Court of the state, the city of Allegheny has authority to grant to a railroad company the right to use, for the purpose of erecting a railroad passenger station in part thereon, a portion of the ground set apart as commons by Act Sept. 11, 1787 (2 Smith's Laws, p. 414), providing for laying out the town, and afterwards granted to the city to be used for public purposes.

2. SAME—ENJOINING EXECUTION OF CONTRACTS—FORMAL DEFECTS.

Act Pa. March 7, 1901, p. 29, for the government of cities of the second class, in providing, inter alia, that the city solicitor shall prepare and indorse his approval of the form upon all contracts made with the city, and that such contracts shall be signed by the city recorder and the head of the proper department, is directory only, and relates to contracts by which the city assumes pecuniary liability; and in any event the fact that the form of a contract authorized by the city councils to be executed by the proper officials, granting rights in public grounds,

has not been approved by the city solicitor, or that it has not been signed by the head of the proper department, affords no ground for enjoining its execution in proper form and by proper officers at suit of a taxpayer.

Appeal from the Circuit Court of the United States for the Western District of Pennsylvania.

J. M. Stoner, for appellant.
W. S. Dalzell, for appellee.

Before DALLAS, GRAY, and BUFFINGTON, Circuit Judges.

GRAY, Circuit Judge. The appellant and complainant below, being a citizen of the state of New York and an owner of real estate in the city of Allegheny, in the state of Pennsylvania, and as such a taxable in that city, filed her bill in the Circuit Court of the United States for the Western District of Pennsylvania, to restrain, by injunction, the said city of Allegheny, a corporation and citizen of the state of Pennsylvania, its officers and servants, from executing a certain contract set out in said bill with the Pennsylvania Company, afterwards the intervener in said suit, and "from conveying, releasing or otherwise impairing the title" of the said city to certain real property, by deed or any other instrument of writing executed and delivered to the said company. The contract sought to be restrained was embodied in an ordinance passed by the legislative authority of the said city of Allegheny, the material parts of which were, as follows:

"Section 1. Be it ordained and enacted by the select and common councils of the city of Allegheny, and it is hereby ordained and enacted by the authority of the same, that the proper officials of the said city be and they are hereby authorized and empowered in the name and on behalf of the said city of Allegheny, to make and enter into a contract with the Pennsylvania Company, lessee of and operating the railway of the Pittsburgh, Ft. Wayne & Chicago Railway Company, in the form following, to wit:

"Contract.

"'This agreement made this —— day of ——, A. D. one thousand nine hundred and five, between the city of Allegheny, hereinafter called the city, as first party, and the Pennsylvania Company, lessee of and operating the railway of the Pittsburgh, Ft. Wayne & Chicago Railway Company, hereinafter called railway company, as second party, witnesseth:

"'Whereas, by an ordinance dated October 12, 1853, the Ohio & Pennsylvania Railroad Company, predecessor in title to the said Pittsburgh, Ft. Wayne & Chicago Railway, was granted a right of way through certain lots in the city of Allegheny, and the same right of way was continued through the commons to Federal street; and whereas, the Pennsylvania Company, lessee of and operating the Pittsburgh, Ft. Wayne & Chicago Railway, has in accordance with its contract with the city of Allegheny dated the 1st day of November, 1901, and for the safety, security and convenience of the public, duly elevated the grade of its tracks over and across Federal street in said city, and partly as a result of such track elevation and partly on account of the growth and development of the city, there has arisen a necessity for a larger, better and more modern passenger station at Federal street; and whereas, the Pennsylvania Company being desirous of conforming fully to the requirements of said city in respect thereto, .has duly submitted plans for a passenger station of such character and size as would be a credit to the city and in every way satisfactory to the public and the company, except that in order to better serve the convenience of both, it is desirable that the general waiting rooms, etc., thereof should be larger and more commodious and the driveway and approach thereto wider, and it is greatly to the interest

of the public and of the city that such a station thus wholly suitable and satisfactory should be constructed and maintained at this point; and whereas, in order to properly attain such result it is necessary for said Pennsylvania Company to occupy and use for building purposes a small portion of said right of way hitherto granted as aforesaid and also the narrow strip of the common ground or South Park remaining between the new south line of Stockton avenue, as lately widened by said city and the line of the grant made to the said Ohio & Pennsylvania Railroad Company by said ordinance dated October 12, 1853, which said strip of land has been so reduced in width by said city as to be no longer in any way adapted to or valuable for park purposes:

" 'Now therefore, this agreement witnesseth: That for and in consideration of their respective covenants hereinafter set forth, it is agreed by and between said parties as follows, to wit: First. That so far as their right to so do exist the city hereby grants to the Pennsylvania Company as lessee and the Pittsburgh, Ft. Wayne & Chicago Railway Company as lessor, their successors and assigns, the right to occupy and use for the relocation and reconstruction of the passenger station, buildings, sheds, tracks, driveways and other appurtenances suitable for the accommodation of their business in connection with the proposed new station at Federal street, that part of the south common ground or South Park described as follows,' " etc.

The bill avers that the proposed alienation of the strip of land described in said contract is wholly without authority of law, and charges that the right and title vested, or attempted to be vested in the said railroad company, pursuant to said ordinance and the execution of said agreement, would be a fraud upon complainant and other taxpayers of said city, and prays equitable relief: (1) That the rights of the city of Allegheny in the property described and proposed to be alienated, be declared and affirmed; (2) that the city of Allegheny, its officers and servants, be restrained, by injunction, from executing the contract set out in the foregoing ordinance, etc.

After the filing of the bill, the said Pennsylvania Company was, upon its petition, allowed to intervene as a party defendant, and made answer to the bill. The defendant, the city of Allegheny, filed no answer. Subsequent to the answer of the intervener, the complainant filed an amendment to her bill, adding averments to the following effect: That an act of the state of Pennsylvania for the government of cities of the second class provided that the city solicitor shall prepare all contracts to be made with the city, or any of its departments, and indorse on each his approval of the form thereof, before the same shall take effect; that the said act further provided that all such contracts shall be in writing, signed and executed in the name of the city by the city recorder and head of the proper department; that the said city is a city of the second class; that in this instance the proper department was the department of public works, and that the head of the same did not sign and execute in the name of the said city of Allegheny, or otherwise, the contract mentioned in the bill of complaint; that its city solicitor did not in fact prepare the contract mentioned in the bill of complaint, nor indorse thereon his approval of the form thereof.

To this amendment, the intervener filed a demurrer, which was overruled by the court below, without prejudice however to the demurrant, and "with leave to raise all the questions of law made by said demurrer at the final hearing of the cause." The court below

adjudged that the contract proposed was within the power and authority of the city of Allegheny to make, and that the objections made to the validity of this particular contract, raised by the averments of the said amendment, were, in consideration of the frame of the bill, without merit, and did not warrant the injunction prayed for. The bill was therefore dismissed, and the case has been brought before us by the appeal of the complainant.

The questions here involved, as raised by the assignments of error, are, as stated by the appellant: First. Has the city of Allegheny the right and authority to enter into the contract in question? Second. Were the facts, as stated in the amendment to the bill, to wit, that the contract was not prepared by the city solicitor, nor his approval of the form thereof obtained, and that the same was not signed by the head of the proper department of said city, sufficient to support a decree for an injunction, as prayed for in the bill?

The first question, viz., as to the power and authority of the state to make such a contract as was here proposed, can be disposed of by a brief statement as to the provisions of certain acts of the Legislature of the state of Pennsylvania, touching the title, authority and control of the city of Allegheny to and over the land here in question, and the decisions of its Supreme Court in regard to the same. By the act of March 12, 1783 (2 Smith's Laws, p. 62), appropriating certain lands for the redemption of certain certificates of state debt, a tract of 3,000 acres was reserved by the state opposite Fort Pitt, now part of the city of Pittsburgh. Another act was passed September 11, 1787 (2 Smith's Laws, p. 414), under which the state authorities were empowered to lay out and survey a town in lots with a competent number of outlots for the accommodation thereof; they were likewise directed to reserve out of said lots, for the use of the state, so much land as they may deem necessary for a courthouse, jail, market house, etc., and without the town 100 acres for a common pasture. The town of Allegheny was laid out in pursuance of the act, and the lots were sold and the reservation made for the common of pasture, each lot holder becoming entitled by his patent to the privilege in the common of 100 acres, the title to which remained in the state. "The state owned the land—the lot holders the servitude of pasturage. Both these titles were legal ones and not merely equities, requiring a trustee for their protection. The lot holders could assert their rights in a court of law, in their own names. The state was not constituted a trustee for their protection. She held the land for herself, subject alone to the easement granted to the lot holders. She had, therefore, a perfect right to convey her title, such as it was, to others. In the exercise of this privilege, the Legislature passed the act of April 13, 1840 (Acts 1840, p. 308, § 13). By that act, 'the right of the commonwealth to all the lands within the limits of the city of Allegheny, excepting such parts as had heretofore been appropriated by grant and authority of law, was granted and vested in the city of Allegheny for such public uses as were recited in the act of the 11th of September, 1787, and such public uses as the select and common councils might from time to time direct and ordain. Provided, that no part of the land allotted by the 4th section for a com-

mon shall be applied to any other purpose without releases first being had and obtained from such persons as might by law grant a right to the holder or any part of said common.'" Mayor of Allegheny v. Ohio & Penna. R. R. Co., 26 Pa. 355.

After the language just quoted, the court in the case cited decides that the city councils of Allegheny were authorized by said act to make a conveyance of a portion of said common to the railroad company, for the purpose of constructing its railroad over the same, and that such a conveyance was for a public use, within the meaning of the authority conferred on the city councils by the act above referred to. The court further decides that there is nothing in the proviso which in any manner invalidated the grant, though the grantee took the land subject to any easement of pasture rightfully belonging to any of the owners of the outlots. But, as the court says, the city is not a trustee for the owners of such easements, and they were not parties to the suit, and that in the then proceeding the court had nothing to do with the rights of the lot holders to the privilege of pasture. "When they complain of any violation of their rights, it will be time enough to consider and decide upon them."

But the court found further warrant for the asserted authority of the city councils to grant the land in question to the railroad company, in the act of April 11, 1848, licensing the Ohio & Pennsylvania Railroad Company, which was an Ohio corporation, to operate in the state of Pennsylvania, and providing that:

"If it shall be necessary to occupy any public way or ground, it shall be competent for the municipal or other officers or public authorities owning or having charge thereof, and the railroad company, to agree upon the manner, terms and conditions on which the same may be used or occupied."

And the court decides that the ground in question was public ground, within the meaning of these enactments. All the rights and powers of the Ohio & Pennsylvania Railroad Company, by various acts of the Legislature, became vested in the Pittsburgh, Ft. Wayne & Chicago Railroad Company, and the Pennsylvania Company, the intervener in the present suit.

It has been decided that this right of common, appurtenant to the said outlots, was a common of pasture, the right to take the herbage by the mouths of cattle. Long since, large portions of this common have been devoted to other purposes, sometimes with the express consent, but oftener with the passive acquiescence of the lot holders referred to. In addition to such encroachments, under the authority of an act of the Legislature, the city council of Allegheny appropriated the commons for park purposes, by an ordinance passed May 6, 1858. Under such conditions, existing for so long a period, it would seem to have been impossible that any common of pasture could have been enjoyed on any portion of the original 100 acres so set apart by the act of 1787. No appreciable damage, therefore, of which the court could take notice, could come to any of these lot holders at the present time, by reason of any depreciation of or interference with a right of common of pasture. As far back as 1855, Chief Justice Lewis, speaking for the Supreme Court of Pennsylvania, in Bell v. Ohio & Pennsylvania R. R. Co., 25 Pa. 161, 64 Am. Dec. 687, says:

"This is a bill by one who claims common of pasture in certain land called the South Common, in Allegheny City. * * * The South Common, before the grant to the railroad company, was a strip of land of the width of 144 feet. It has not been inclosed. It has been as open to the public at large as to the commoners themselves. The herbage is about as abundant as that which might be found in a recently disinterred street of Herculaneum. The plaintiff's right to take the herbage by the mouths of his cattle is of no appreciable value."

It is unnecessary, however, to further consider any claim on the part of the plaintiff, based upon her right as the owner of an inlot to maintain her bill against the city of Allegheny. Whatever may have been her position in the court below, her counsel in this appeal admits that the "appropriation of said lands by the authorities of the city for use as a public park, extinguished the right of the lot holders to common of pasture therein." She insists, therefore, upon her claim to enjoin the said city solely upon her status as a taxable of the same.

The right of the owner of taxable real estate in a corporate city, to restrain the corporation from an illegal disposition of corporate property, or of any abuse of its authority which may directly affect the pecuniary interests of such taxable, may be admitted. It seems to us, however, in the present case, that it is not open to serious question, that the city councils of Allegheny were fully authorized by the acts of the Legislature already referred to, to make the contract with the Pennsylvania Company, set out in the bill of complaint. It seems perfectly clear that it was a grant for public uses, and for that reason within the power of the city authorities to make, as expressly conferred upon them by the Legislature of the state of Pennsylvania. Not only so, but the contract in question purports on its face to be for the consideration of an express covenant on the part of the Pennsylvania Company, at its own expense, to erect and maintain passenger stations, sheds and approaches, obviously for the convenience of the public and for the betterment of the public service furnished by said company. To this conclusion we would be compelled, independently of the two cases already cited, in which the Supreme Court of the state has declared such uses as these contemplated by the contract in question, to be public uses, within the meaning of the acts of the Legislature above referred to. The record contains no evidence that such occupation by the railroad company will amount to a nuisance, per se or otherwise, nor is there any claim to that effect, or that there was any bad intention, or want of good faith in the making of the proposed contract.

This brings us to the remaining question raised by the assignments of error, viz., whether the fact that the ordinance or contract proposed thereby had not been prepared by the city solicitor, nor his approval of the form thereof obtained, and the fact that it was not signed by the director of the proper department of the said city, are sufficient grounds upon which to grant the injunction prayed for. The Pennsylvania act of March 7, 1901 (Acts 1901, p. 29), for the government of cities of the second class, provides as follows:

"The city solicitor shall be the legal adviser and act as attorney and counsel for the city and all its departments and officers, prepare all con-

tracts to be made with the city, or any of its departments, and endorse on each his approval of the form thereof, before the same shall take effect, and be the custodian of all such papers and records as may be designated, and perform such other duties appertaining to his department as may be required by law or ordinance."

We think, with the court below, that these provisions concerning the duties of the city solicitor are directory and ministerial. The power of contracting in the name of the city, and of imposing contractual obligations upon it, was certainly not intended to be conferred on the city solicitor by the provision referred to. It is true, the form of the written contract is required to be approved by him before it takes effect, but this requirement does not invest him with the power to say what contracts shall or shall not be made by the city, or to veto one that has been made by its proper representatives. We think that the character of the contracts which he is to prepare, and the form of which he is to approve, and which are required to be signed and executed in the name of the city by the city recorder and head of the proper department, sufficiently appears from article 15 of the said act, which reads as follows:

"Section 1. All contracts relating to city affairs shall be let to the lowest responsible bidder, after reasonable notice. When the contract exceeds two hundred and fifty dollars such notice shall be by advertisement; when less than that amount, advertisement may be dispensed with. Contracts shall be let as heretofore in each of the cities of said class as heretofore, but all bids shall be received and opened publicly by the committee or official entrusted with the awarding of the contract, at a time to be designated in the advertisement or notice to bidders, and the figures shall be stated to the bidders then present. All contracts shall be in writing, signed and executed in the name of the city by the city recorder and head of the proper department. No contracts shall be entered into or executed directly by the councils or any committee thereof. All contracts shall be countersigned by the controller and filed and registered by number, date and contents in the city recorder's office, and attested copies furnished to the controller and the department charged with the work."

Evidently these provisions refer to those contracts relating to current city affairs, which are required to be "let to the lowest responsible bidder"; contracts imposing pecuniary obligation upon the city for work done or materials furnished. They evidently do not include or touch the right of the select and common councils by ordinance to direct and ordain to what public uses the property vested in the city should be put, or nullify the provision of the act of 13th of April, 1840, above recited, by which express authority was conferred upon the select and common councils of the city of Allegheny for that purpose. Conceding, for the sake of the argument, that the city solicitor is required to indorse his approval upon the form of such an ordinance or contract before it takes effect, it is to be observed that it is only as to the form of the contract, and not its substance or policy, that he is required to approve, and therefore, if he refuses to approve the form, he would be expected and required to indicate in what respect of form it was defective, and prepare a written contract which would carry out the will of the contracting power in a form approved by himself. Whether he could be compelled by a writ of mandamus to exercise such discretionary and ministerial pow-

er as is thus reposed in him is a question not now necessary to be determined. The same may be said of the purely ministerial duties imposed by article 15 of the act of 1901, upon the city recorder and head of the proper department.

These, however, are, as said by the court below, academic questions in the present case. The ordinance proposing the contract on the part of the city of Allegheny with the Pennsylvania Company, and quoted at length in the bill of complaint, is entitled "An ordinance to authorize the proper officials, for and in behalf of the city of Allegheny, to enter into a contract with the Pennsylvania Company," etc., for certain purposes. The only prayer of the bill, besides that which asks the court to declare the rights of the defendant in the property described in said ordinance, and the prayer for further relief, is the prayer that the defendants, the city of Allegheny, its officers and servants, be restrained by injunction from executing the contract set out in the foregoing ordinance, and from conveying, releasing or otherwise impairing the title of the said Allegheny City to said property.

We have already seen that it was within the competence of the city councils of Allegheny, under the authority with which they were clothed by the act of 1840, to dispose of the ground in question for the purposes set forth in their ordinance. By what particular officials the written instrument, evidencing the contract made by the councils should be executed, is a subordinate question, but the suggestion that the proper officials, whoever they may be, should be prevented, by injunction of the court, from executing a contract which the court has determined was one in the power of the city councils to make, hardly needs a serious answer. If, hereafter, the written contract should be executed by an improper officer, or be otherwise open to criticism for defect in form of execution, there will be a time and place for the consideration of these matters.

The prayers contained in this bill are clearly inadmissible, and the decree of the court below, dismissing the same, is hereby affirmed.